UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:09-CR-00026-R

UNITED STATES OF AMERICA                                              PLAINTIFF

v.

BRICESON WALKUP, et. al.                                              DEFENDANTS

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court upon Defendant Briceson Walkup's Motion to Suppress Fruits of Electronic Surveillance (DN 495). Defendants Roderick Curry and Charles Curry have filed similar motions, adopting and incorporating Walkup's arguments (DN 498, 501). Government has responded (DN 519) and Defendant has replied (DN 524). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is DENIED.

**BACKGROUND**

Defendant Briceson Walkup is one of thirty defendants named in a forty-three-count indictment. He is charged on two counts, participation in a conspiracy to possess and distribute fifty grams or more of crack cocaine (violation of 21 U.S.C. §§ 841(b)(1)(A), 846) and knowingly and intentionally possessing crack-cocaine with the intent to distribute (violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)). He is alleged to be a member of a drug trafficking conspiracy that was centered in Columbia, Kentucky.

In 2007, members of the Federal Bureau of Investigation ("FBI") and Kentucky State Police ("KSP") began a joint investigation of drug trafficking in a neighborhood of Columbia commonly referred to as "the Pike." The investigation centered on a drug trafficking organization allegedly headed by Roderick Curry. For over a year, the investigation used a variety of techniques to gain information on Curry and his organization, including confidential

informants, controlled purchases of drugs, consensual monitoring of informants with Curry and his suspected associates, surveillance of the neighborhood where Curry operated, and pen registry analysis of phones that Curry used.

In September of 2008, the FBI applied for a warrant authorizing a wiretap on two telephone numbers that Curry and his organization were believed to be using. Special Agent Thomas Devine of the FBI petitioned for the wiretap. At that time, Devine was a ten-year veteran of the FBI with training and experience in drug investigations and electronic surveillance. In the Affidavit in Support of Application for Authorization to Intercept Wire and Electronic Communications ("affidavit"), Devine detailed the lengthy investigation and the methods employed by the FBI and KSP to gather evidence. To show the necessity of the requested wiretaps, he described the difficulty law enforcement agents were encountering in identifying all the co-conspirators of Curry's narcotics organization, the source of the illegal narcotics, and the scope of Curry's narcotics distribution activities. Devine's affidavit set forth the following reasons why a wiretap was required in lieu of other investigative techniques:

- While confidential sources had been heavily utilized, Devine's experience told him that confidential sources had limited information on the organization as a whole and the information the sources provided would be insufficient to target Curry's suppliers and customers.

- Searching Curry's residence in Columbia with a valid warrant would not provide sufficient evidence to determine the scope of criminal activity and the methods being used by Curry's organization. Devine stated that although probable cause existed to effectuate a search on the residence, confidential informants indicated the narcotics were most likely not kept in the residence. Devine also affirmed that even if law enforcement officers were able to search the residence and discover illicit narcotics, this would not supply the investigation with the evidence it sought - information on the participants in and scope of Curry's organization.

- Surveillance by law enforcement officers had proven of little value given that Curry employed lookouts to monitor for approaching police and the layout of the neighborhood made it near impossible to observe Curry's residence undetected. Devine further described attempts to conduct aerial surveillance on Curry and the neighborhood where

  he operated. These efforts failed as adverse weather conditions and overgrown foliage stymied law enforcement's efforts.

  - Even though pen registries as well as traps and traces had been employed during the investigation, these tools did not reveal the content of the phone call or the identity of the caller.

  - Devine believed that attempting to remove trash from Curry's residence would not yield valuable evidence because in Devine's experience, high-level drug traffickers destroyed incriminating items instead of discarding them in the trash. Devine also worried that trash searches risked detection by Curry because the trash was stored so close to his house and sanitation workers, who ultimately would pick up the trash, might inform Curry of the ongoing investigation.

  - In Devine's opinion, interviews with Curry's associates, vehicle tracking devices, undercover operations, and a Federal Grand Jury Investigation would not produce strong evidence.

Based on the information supplied by the prior investigation and in light of these reasons, Devine claimed electronic surveillance was necessary. The district court judge issued an order authorizing the interception of wire communications on September 10, 2008, terminating thirty days later. On October 10, 2008, the district court judge renewed his authorization for thirty additional days. Devine's second affidavit for this subsequent application incorporated by reference his first affidavit with the aforementioned reasons for the wiretap.

  Defendant was recorded on ten separate phone calls between September 9 and October 21 of 2008. All but one of the phone calls were between Defendant and Curry. Defendant now moves to suppress evidence from any of the intercepted telephonic communications. As basis for this motion, Defendant argues that Devine's affidavit did not appropriately establish the "necessity requirement" that must be shown in an application for a wiretap, and for that reason, the first order authorizing the interception of electronic communication was improper. Defendant also avers that as the second order from the district court judge authorizing the wire

tap for an additional thirty days is an extension of the first order, it too is invalid and represents fruit of the poisonous tree.

## STANDARD

Federal statute sets forth the necessity requirement, mandating that an application for a wire tap shall include "[a] full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). It is required in every application "to ensure that a wiretap 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *United States v. Alfano*, 838 F.2d 158, 163 (6th Cir. 1988) (quoting *United States v. Kahn*, 415 U.S. 143, 153 n. 12 (1974)). The necessity requirement also prohibits law enforcement officers from prematurely relying on wiretaps as an investigative tool. *See United States v. Rice*, 478 F.3d 704, 710 (6th Cir. 2007) (citing *United States v. Giordano*, 416 U.S. 505, 515 (1974)).

"Although Title III sets forth elaborate procedures for obtaining permission to use a wiretap, 'the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted.'" *Id*. at 710 (quoting *Alfano*, 838 F.2d at 163). "All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *Alfano*, 838 F.2d at 163-64; *see Rice*, 478 F.3d at 710. Where, however, the investigating officers present a "purely conclusory affidavit" that fails to demonstrate the facts to the circumstances at hand, the necessity requirement is not met. *Rice*, 478 F.3d at 710 (citing *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977)).

Finally, great deference should be afforded the issuing judge's decision when "reviewing the validity of an electronic surveillance order." *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000).

## ANALYSIS

Defendant argues that as Devine's affidavits indicate the police investigation was working well, wiretaps were not critical to the production of additional evidence. Defendant points to the four confidential informants who were funneling information to the authorities, the numerous controlled purchases of drugs by these informants, the information supplied by pen registries, and the surveillance of the members of the drug conspiracy to illustrate why the success of the investigation rendered the wiretap unnecessary. He further alleges that alternative investigative techniques like search warrants were not employed and should have been utilized before the district court authorized the interception of wire communications. Defendant charges that anticipatory search warrants could have been executed on Curry's residence and other properties associated with his organization before the authorities resorted to electronic surveillance.

The Government responds to this argument by stating that the purpose of the investigation was broader than simply arresting Curry or searching properties with which he was affiliated; wiretaps were necessary to identify his sources of supply and all other co-conspirators.

The Court has closely reviewed both of Devine's affidavits. In short, each provides an extremely detailed account of the alternative investigative techniques and why they had been or would be inadequate to accomplish the investigation's objectives. The Court finds that the investigators gave serious consideration to the non-wiretap techniques prior to applying for wiretap authority. Law enforcement officers employed confidential informants, controlled

purchases, pen registries, and surveillance on the ground and from the air; none of these methods could supply them with the desired information.  Regarding the investigative techniques that were not tried, Devine's affidavit provided solid reasons as to why those techniques were inadequate or inappropriate.  Specifically addressing Defendant's assertion that the option of search warrants should have been pursued before a wiretap, Devine affirmed that searching the residences with ties to Curry's organization would have been unfruitful because the evidence most likely to be garnered from these searches would not have yielded information on the participants in or the scope of Curry's organization.  Devine relayed a variety of reasons for this, all premised on his own and other officer's experience in narcotics investigations.  Finally, the affidavits were not purely conclusory, but were supported by facts and Devine's investigative experience.  For these reasons, this Motion to Suppress is improper.

Because the requisite necessity was present for the initial wiretap issued on September 10, 2008, Defendant's argument regarding the validity of the subsequent wiretap issued on October 10, 2008, is also improper.  Devine's second affidavit attesting to the necessity of the wiretap is equally persuasive.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion (DN 495) is DENIED.

As the Motions to Suppress submitted by Defendants Roderick Curry and Charles Curry add no substantive arguments to Walkup's Motion, IT IS HEREBY ORDERED that those Motions (DN 498, 501) are also DENIED.